**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3004
_____

CHRISTOPHER A. ROGALSKI,
                                        Appellant

v.

LAUREATE EDUCATION, INC.;
LAUREATE ONLINE EDUCATION BV; and
THE UNIVERSITY OF LIVERPOOL

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Civ. No. 1:20-cv-11747)
District Judge: Honorable Joseph H. Rodriguez

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 6, 2023
Before:  KRAUSE, PHIPPS, and SCIRICA, <u>Circuit Judges</u>

(Opinion filed: April 11, 2023)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Christopher Rogalski appeals the District Court's decision granting a motion to dismiss his complaint under Federal Rule of Civil Procedure 12(b)(6). Because dismissal was the right result, we will affirm.

## I. Background

In 2009, Rogalski responded to an ad for the University of Liverpool's (the University's) online program for an LL.M. degree in "International Business Law" (the program). He was immediately contacted by Laureate Online Education BV (LOE)—the University's "e-learning partner"—which supplied Rogalski with a "Student Agreement," terms for tuition financing, and a credit-card authorization form.

Rogalski accepted the terms via email and completed the program. But a payment dispute kept him from receiving a degree; LOE demanded $6,160.32 "in order to graduate as scheduled in July 2012." The next year, LOE's Board of Examiners lowered the dissertation grade assessed by Rogalski's instructors, enough so that he was ineligible to graduate "with distinction." Rogalski's appeal of that decision—which challenged not only the grade but also financial matters—concluded on February 19, 2014.[1]

In June 2020, Rogalski filed suit in New Jersey state court against the University, LOE, and "Laureate Education, Inc." (LEI). His five-count complaint raised contract and fraud claims under state law. Among other remedies, Rogalski requested damages "in excess of $300,000" and that he be awarded his LL.M. degree "with distinction."

---

[1] The complaint states that the appeal concluded on "February 19, 2020," but Rogalski noted in a later filing that "2020" was, in multiple places, a product of typographic error.

LEI removed the case under 28 U.S.C. § 1441(a), invoking the District Court's diversity jurisdiction under 28 U.S.C. § 1332(a). Soon after, LEI filed a Rule 12(b)(6) motion, attaching the Student Agreement as well as a document titled "Annex A General Term and Conditions" (the Code). The Code contained a forum selection clause (FSC) requiring that "any dispute arising from the Student Agreement or from this Code" be resolved in the Netherlands. Citing the FSC, LEI argued that Rogalski must litigate abroad. It argued in the alternative that Rogalski's claims were time-barred.

Rogalski did not opt to amend his pleading, as of right, in response. Instead, he argued in opposition to LEI's motion that he did not sign the Student Agreement and had never been presented with the Code, and that the FSC was otherwise unenforceable under New Jersey law. Rogalski also raised laches and estoppel arguments, among others. With respect to LEI's statute-of-limitations argument, Rogalski argued that he was entitled to later claim-accrual dates and to equitable tolling under New Jersey law.

The District Court agreed with LEI's position that the FSC is enforceable and that Rogalski was required to pursue his claims in the Netherlands. Based on that ruling, the District Court had no need to reach LEI's statute-of-limitations argument. The District Court granted LEI's motion by order entered September 30, 2022. This appeal followed.

II. Appellate Jurisdiction

Although the litigants say we have appellate jurisdiction, we cannot rest on their accord. See Collinsgru v. Palmyra Bd. of Educ., 161 F.3d 225, 229 (3d Cir. 1998) ("Despite the agreement of both parties, we have an independent obligation to examine our jurisdiction to hear this appeal."), abrogated on other grounds by Winkelman ex rel.

3

<u>Winkelman v. Parma City Sch. Dist.</u>, 550 U.S. 516 (2007). To review the District Court's order at this time, it must be "final" under 28 U.S.C. § 1291. For purposes of § 1291, "[a] final decision ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." <u>Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela</u>, 24 F.4th 242, 249 (3d Cir. 2022) (citation omitted). The District Court here granted LEI's motion to dismiss and did not address the status of the other named defendants, perhaps suggesting there was more of the case to litigate.

Federal Rule of Civil Procedure 54(b) speaks to the finality question in multi-defendant actions. And it provides that a decision which adjudicates "fewer than all the claims or the rights and liabilities of fewer than all the parties" does "not end the action as to any of the claims or parties" (unless the district court expressly says so). Fed. R. Civ. P. 54(b). That said, LOE and the University were never served. This fact matters because "a named defendant who has not been served is not a 'party' within the meaning of Rule 54(b)." <u>Gomez v. Gov't of V.I.</u>, 882 F.2d 733, 736 (3d Cir. 1989).[2] Per <u>Gomez</u>, then, the District Court's September 30, 2022 order was "final" as to all *parties* in the case, and we may exercise appellate jurisdiction under § 1291.

### III. Standard and Scope of Review

---

[2] Rogalski requested that the District Court approve letters rogatory, which he said were needed to serve LOE (in the Netherlands) and the University (in the United Kingdom) under Federal Rule of Civil Procedure 4(f) and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters. The District Court did not respond to Rogalski's request. Because Rogalski does not clearly argue that (or how) the District Court erred with regard to service on LOE and the University, any such argument is forfeited. <u>See</u> <u>Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.</u>, 877 F.3d 136, 145-46 (3d Cir. 2017).

Our standard of review is de novo. See Newark Cab Ass'n v. City of Newark, 901 F.3d 146, 151 (3d Cir. 2018). "When reviewing a district court's order on a Rule 12(b)(6) motion, we accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" Watters v. Bd. of Sch. Dirs. of Scranton, 975 F.3d 406, 412 (3d Cir. 2020) (citation omitted).[3] In adjudicating motions to dismiss under Rule 12(b)(6), courts are permitted to consider "undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

Accordingly, the background of this case, as we have described it above and elsewhere, has tracked Rogalski's plausibly pleaded factual allegations and the public record of the proceedings. Quotations were pulled from the complaint and its exhibits. See Fed. R. Civ. P. 10(c).

Additional quoted material is from the Code, which requires a brief explanation. Rogalski has at all times disputed that the nineteen-page Code produced by LEI and the one-page Student Agreement attached to the complaint are parts of a whole. We need not and do not decide whether the District Court could properly consider the Code, in the

---

[3] Absent unusual circumstances not present here, pro se litigants with formal legal training—like Rogalski—are not afforded liberal construction of their pleadings. See Tracy v. Freshwater, 623 F.3d 90, 102 (2d Cir. 2010) (collecting cases); cf. Allen v. Aytch, 535 F.2d 817, 821 n.21 (3d Cir. 1976) ("The rationale of [Haines v. Kerner, 404 U.S. 519 (1972)], that those who have no legal training are entitled to have their pleadings read as liberally as possible, may not apply to a complaint prepared by someone with substantial legal training, even if he was not yet a member of the bar of the district court when the complaint was filed.").

absence of a certification by LEI's counsel or some other authentication mechanism; as revealed below, we resolve the appeal on grounds that do not implicate the Code. And, to be clear, we have quoted the Code solely for the purpose of detailing procedural history.

## IV. Discussion

The District Court granted LEI's Rule 12(b)(6) motion, insofar as the motion relied on the FSC, after concluding under New Jersey law that Rogalski had through his communications and conduct assented to the terms of the Student Agreement and the Code. Whether LEI was even entitled to avail itself of the relevant contractual terms is an interesting but avoidable question.[4] We determine instead that LEI's statute-of-limitations argument in the District Court, which it maintains on appeal, see LEI Br. at 20-30, is sound and on its own required dismissal of Rogalski's complaint.

Courts may grant a Rule 12(b)(6) motion based on a statute-of-limitations defense when the untimeliness of the plaintiff's claim(s) is apparent on the face of the complaint. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014); Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002). LEI argues based on the pleaded chronology that Rogalski's claims are time-barred under N.J.S.A. § 2A:14-1(a)—New Jersey's six-year statute of limitations for contract- and fraud-based claims. See Stephens v. Clash, 796 F.3d 281, 289 (3d Cir. 2015) ("[A] federal court must apply the substantive laws of its forum state in diversity actions, and these include state statutes of limitations.").[5] We agree.

---

[4] The Code defines "the Parties" to it as the participating student (here, Rogalski) and LOE. There is no mention of LEI anywhere in the document.
[5] LEI seeks to preserve an argument for a five-year limitations period under Dutch law. See, e.g., LEI Br. at 20 n.3. A shorter limitations period would not change the outcome.

In his complaint, Rogalski alleged that: LOE failed to credit several monthly tuition payments made between "July 2009" and "February 2012"; LOE added surprise surcharges for credit card payments "[s]tarting in August 2009"; LOE improperly increased the monthly tuition-payment amount "[o]n June 2, 2010" and again the following year; "[o]n March 30, 2012," LOE conditioned Rogalski's graduation on his payment of accelerated tuition; "[o]n February 12, 2013, LOE charged a $500 extension fee" based on its own failure to timely process Rogalski's dissertation grade; the grade was improperly lowered by LOE's Board of Examiners in May 2013; and Rogalski disputed the grading irregularities as well as the financial issues during his appeal process, which concluded on February 19, 2014. Appendix Volume II at 3–8. Those allegations—accepted as true— confirm that the underlying events and injuries occurred, and were understood by Rogalski, more than six years before he filed suit in June 2020. Cf. The Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 169 A.3d 473, 483 (N.J. 2017) ("The trigger point for the start of a cause of action under an accrual statute is when 'the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another.'") (citation omitted)).

We recognize that the complaint also contains an allegation regarding a "June 3, 2014" communication from a professor at the University informing Rogalski that he

---

Cf. Ross v. Johns-Manville Corp., 766 F.2d 823, 826 (3d Cir. 1985) ("[A] federal court, sitting in diversity, follows the forum's choice of law rules to determine the applicable statute of limitations."); McCarrell v. Hoffmann-La Roche, Inc., 153 A.3d 207, 216 (N.J. 2017) ("When application of the forum state's or another state's statute of limitations results in the same outcome, no conflict exists, and the law of the forum state governs.").

would be eligible to graduate "in July 2014." Appendix Volume II at 8. Rogalski relied on that allegation to argue in the District Court that he was tricked into thinking he would be receiving his degree, which is a basis for equitably tolling the limitations period. Cf. Bustamante v. Borough of Paramus, 994 A.2d 573, 588 (N.J. Super. Ct. App. Div. 2010) (explaining that equitable tolling applies if the plaintiff has been "induced or tricked by his adversary's misconduct into allowing the filing deadline to pass"). Assuming, arguendo, that the June 3, 2014 communication gave Rogalski sufficient pause about litigating over his entitlement to a degree, that aspect of his complaint may indeed be timely.[6]

But by Rogalski's own admissions, a separate basis for dismissal exists: mootness. See JA Vol. II at 22 (Sept. 2, 2022 letter from Rogalski to the District Court) (explaining that because the University "indicates that it conferred my LL. M.," "the specific performance requested in Count 3 of the complaint is now moot"); Reply Br. at 2 ("Appellant finally received his LL. M. in International Business Law with distinction from [the University] after filing this appeal. Consequently, some relief sought in the complaint is now moot, i.e., specific performance, (Count 3) and unjust enrichment (Count 5)."); Reply Br. at 11 ("[S]ince [the] degree has been awarded, the only remaining issues are financial."). To be sure, the June 3, 2014 communication is irrelevant to

---

[6] Rogalski averred in a sworn affidavit attached to his opposition to LEI's motion to dismiss that he "delayed bringing this action in an American court until such time as LOE, and its parent company had clearly abandoned attempts to bring suit [against Rogalski in the Netherlands]." JA Vol. III at 37. As we are reviewing an order granting dismissal under Rule 12(b)(6), we have not been influenced by Rogalski's affidavit.

8

whether Rogalski's tuition payments were uncredited, or to whether he was improperly charged certain fees, or to whether he received an online educational experience commensurate with his expectations and the program's cost, or to any other live issues. So the only aspects of the complaint that may be timely are nevertheless moot. Cf. Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996) ("If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot.").

Rogalski offers nothing on appeal to challenge the above assessment. Rather, he argues that "LEI's request that this court adjudicate issues raised below but not decided by the District Court is clearly contrary to precedent." Reply Br. at 13 (relying on Katz v. Carte Blanche Corp., 496 F.2d 747 (3d Cir. 1974) (en banc)). Rogalski's reliance on Katz, however, is entirely misplaced.

In Katz, which dealt with the peculiarities of class action practice and interlocutory appeals under 28 U.S.C. § 1292(b), we "refused to reach an issue posed by an order appealed under section 1292(b) where that issue was not addressed by the district court." Miller v. Bolger, 802 F.2d 660, 666 (3d Cir. 1986). Katz has no bearing on whether, in exercising jurisdiction under § 1291 to review a "final" order granting dismissal under Rule 12(b)(6), we may affirm on grounds alternative to those relied on by the District Court.[7] And we can do just that, so long as those grounds are rooted in the

---

[7] Equally errant is Rogalski's reliance on Kreider Dairy Farms, Inc. v. Glickman, 190 F.3d 113, 118 (3d Cir. 1999), where we considered "an exception to the general finality

existing record. See Watters, 975 F.3d at 412; see also Shark River Cleanup Coal. v. Twp. of Wall, 47 F.4th 126, 136 (3d Cir. 2022) (affirming dismissal on "alternative ground" even though "it was not reached by the District Court"); Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc., 85 F.3d 1098, 1107 (3d Cir. 1996) (recognizing that "we may affirm a correct decision of the district court on grounds other than those relied upon by the district court").

For all of the reasons outlined above, we will affirm the District Court's order dismissing the complaint.[8]

---

rule for certain District Court orders remanding for further administrative proceedings."

[8] Rogalski's argument that the District Court should not have directed him to file a statement pursuant to Local Civil Rule 7.1.1 (pertaining to disclosure of third-party litigation-funders), may be correct. But his larger critique of the District Judge's handling of this case presents neither a viable due process claim nor a basis to do anything in this appeal other than affirm.